GANTER and others vs. ATKINSON and others.

REAL ESTATE: MINES. (1) *Oral lease of mining interest in land; right of lessee to maintain action against trespassers.* (2) *Damages in such action.* (3) *Oral lease not presumed to be for more than one year.* (4) *When lessees under oral lease considered tenants from year to year.* (5) *Cases distinguished.* (6) *Effect of statute not considered.*

1. By oral agreement the owner of certain land gave plaintiffs the right to enter thereon for mining purposes, and the exclusive right to mine in or upon the same, and to take away ores therefrom, for a certain rent in kind. *Held,* that plaintiffs thereby acquired an *interest in the land,* and might maintain an *action of trespass* against third persons for mining upon and taking ore from said land.

2. In such action, defendants must account to plaintiff for the value of the ore so wrongfully taken.

3. An oral lease of land for a longer period than one year is *void;* but where the term for which the oral agreement was made does not appear, it will not be assumed that it was for more than a year.

4. It *seems* that if the lessees in such oral lease continued to work the land after the expiration of a year, they would be regarded, in an action against third persons for trespassing on the land, as tenants from year to year.

5. *Gillett v. Treganza,* 6 Wis., 343, distinguished.

6. Whether plaintiffs could maintain an action under ch. 260, Laws of 1860, as amended by ch. 117, Laws of 1872, is not here decided.

APPEAL from the Circuit Court for *Grant* County.

The complaint alleged that a certain tract of mining land, comprising forty acres, was the property of Nelson Dewey; that one Turley was the agent of Dewey in charge of the land, and empowered to make contracts with miners for working it; and that Turley, by a verbal contract with plaintiffs, gave them the sole right to mine for lead ore in a certain part of said tract, upon the following conditions, viz: Plaintiffs were to begin work at the bottom of a hole already sunk about midway between the north and south boundaries of the land, and about 200 feet west from the east boundary, and were to run a

drift quartering to a point on the east boundary line, a little south of southeast from said hole. They were to have the exclusive right to work and take out all ore found in the drift, or in the crevices or openings between the line of the drift and the east boundary line of the land. They were also to have the exclusive right to take ores out of or to mine upon the triangular piece of land bounded by a line drawn directly eastward from said hole to the east line of the forty, by said east line, and by a line between said hole and the point where said drift was to strike the east line. In consideration of these rights, plaintiffs were to pay to Dewey one-eighth of the ores which they might take out. It is further alleged that " it was the intention of the said agent to give the plaintiffs a written lease to mine upon said land with the rights aforesaid, but he omitted and neglected to do so." It is then alleged that after plaintiffs had begun work on their quartering drift as aforesaid, defendants wrongfully ran a drift east and west intersecting plaintiffs' drift, following a crevice which ran from beyond the east line of the forty acres westward across said triangular piece of land; and that they took out of said crevice large quantities of valuable ore, to which plaintiffs had the exclusive right, and sold and converted the same to their own use, and refused to pay the proceeds to plaintiffs. Judgment is demanded for the value of this ore. Defendants demurred generally to the complaint, and appealed from an order overruling their demurrer.

*Wm. E. & Geo. B. Carter*, for appellants, argued that a right to an unopened mine, or to minerals in the soil unsevered, is an interest in lands (*Wilkinson v. Proud*, 11 M. & W., 33 ; *Gillett v. Treganza*, 6 Wis., 643 ; 2 Bainb. on Mines, *117, *261 ; 2 Washb. R. P., 347), and cannot be created by parol. R. S., ch. 106, secs. 6 and 8; *French v. Owen*, 2 Wis., 250; *Clute v. Carr*, 20 id., 531; *Duinneen v. Rich*, 22 id., 550. Plaintiffs had, at most, a mere license, revocable at the pleasure of the licensor or grantor. *Hazelton v. Putnam*, 3 Chand., 117 ; *Clute*

*v. Carr*, 20 Wis., 531 ; *Fryer v. Warne*, 29 id., 511 ; *Duinneen v. Rich*, 22 id., 550 ; *Wood v. Leadbitter*, 13 Mees. & Wels., 838 (14 L. J. Exch., 161) ; *McCrea v. Marsh*, 12 Gray, 211 ; *Burton v. Scherpf*, 1 Allen, 133 ; *Doe v. Wood*, 2 Barn. & Ald., 724 ; Bainb. on Mines, *268 et seq. Their license being revocable, they had no interest in the unsevered ores. The right of action to recover for the ore taken out by defendants is in Dewey, unless defendants have settled with him ; and if he can maintain the action, it is plain that the plaintiffs cannot. Counsel further contended, at length, that the action could not be maintained under ch. 260, Laws of 1860.

*Barber & Clementson, contra,* argued that at common law a license to mine, until revoked by notice from the licensor, carried with it an interest in the land. 1 Crabb's Real Property, sec. 100. Trespass will lie for encroaching on a lead mine, though the plaintiff has no property in the soil above the mine, but only a liberty of digging. 2 Hilliard on Torts, 474. The supreme court of Iowa, in *Beatty v. Gregory*, 17 Iowa, 109, held that a miner who has entered and made expenditures under an unlimited parol license, and whose right has not been in anywise terminated, may bring an action of ejectment against the licensor or his lessee. See also *Harker v. Birkback*, 1 W. Bl., 482 ; *Lloyd v. Bellis*, 37 Eng. Law & Eq., 545 ; *Harper v. Charlesworth*, 4 Barn. & Cress., 412. Counsel further contended, among other things, that from the time that plaintiffs struck mineral in crevices quartering upon their drift, their license became irrevocable, by virtue of sec. 2, ch. 260, Laws of 1860, and they had thereafter a fixed interest in the mineral that was in any crevice or opening that their drift might thereafter intersect; and they could therefore maintain this action under that statute.

COLE, J. We are inclined to agree with the counsel for the defendants in the proposition that, upon the facts stated in the complaint, it appears that the plaintiffs had an interest in

the premises described and in the lead ore or minerals in the land, which amounted to something more than a mere license. It is quite analogous to a demise or lease of a particular tract of ground, with the right and authority to work and mine thereon for minerals, together with the right to have and enjoy all such minerals as they should find or discover upon paying the specified rent. For it is alleged that by the verbal contract or agreement made with them by Mr. Turley, the agent of Gov. Dewey, they had the right and privilege of entering upon the land to commence mining operations, and that it was agreed that they should commence work at the bottom of a particular hole or shaft therein mentioned, and were to run a drift or level from that point quartering to a point on the east boundary line of the forty acre tract, a little south of southeast from this shaft, and that they were to have the exclusive right to work and take out all lead ore or other precious ore found in the drift or level, and also the exclusive right to work and take out all lead ore or other precious ore which should be found in any crevices or openings between the line of said drift and the east boundary line of the forty which the drift would intersect on being extended as contempleted : and "they and they only had the right to take away ores out of, or to mine in or upon the triangular piece of land " described by metes and bounds.

Now it seems to us that this verbal agreement is not really distinguishable in its character from a parol lease of a specified tract of land with the exclusive right to search for lead ore or other minerals and prosecute mining operations thereon. It does give the plaintiffs an interest in the land, and property in the minerals which they should find within the specified limits. The plaintiffs were put in possession, and had, according to the complaint, the sole and exclusive right to run their level and to carry on their mining operations, and were to have all the lead ore or minerals which they should dig or discover upon the tract, subject to the payment of one-eighth part of the

Ganter and others vs. Atkinson and others.

ores which they might take out of said piece of ground, as rent to Gov. Dewey. We really cannot see that the case would have been different if this particular piece of ground had been demised to the plaintiffs to cultivate or for any other purpose. If the agreement, then, does create an interest in the land and in the minerals therein found or discovered, the question arises, Is such a contract void under the statute of frauds? The statute declares that no estate or interest in lands, other than leases for one year, shall be created or granted except by an instrument in writing subscribed by the party creating the same. Ch. 106, R. S. The complaint in this case fails to show the period this lease was to continue. We cannot assume that the premises were demised for more than one year. It is true, it appears the plaintiffs have worked over a year under the parol contract. Precisely what their rights would be in the triangular piece of ground leased, as respects Gov. Dewey, after the expiration of the year, is a question we need not consider. It is sufficient to say that the verbal arrangement and contract made by Turley with the plaintiffs amounted probably to a lease from year to year of that specified tract for mining purposes. If this view be correct, then it seems to us that as respects the defendants, they were simply wrongdoers in mining upon ground which had been expressly leased to the plaintiffs, and from which they were restricted from extending their mines and drifts. They had no right, according to the complaint, to follow any crevice across the east line of the forty upon which the plaintiffs were mining, and on to the triangular piece of ground which the latter had the exclusive right to mine upon. This to our minds is very plain. The defendants, without right or authority, followed their drift or crevice on to the plaintiffs' ground, and removed mineral from premises which, upon the averments of the complaint, they were expressly prohibited from mining upon. It seems to us that if such were the facts they must account for the mineral

which they have wrongfully and unjustly taken from this triangular piece demised to the plaintiffs.

. The case of *Gillett v. Treganza*, 6 Wis., 343, was referred to on the argument by counsel on both sides, as though it had a direct bearing upon the question here to be decided. That case, however, is quite distinguishable in its facts from the one before us. It was an action of replevin brought by the miner against the owner of the land for wrongfully taking mineral which the defendants had dug and raised from a certain range which the plaintiffs had or claimed to have the sole and exclusive right and privilege to mine upon. It was held that the agreement in that case only gave the plaintiffs the right of digging or searching for lead ore upon the range, but did not grant or demise the mineral or lead ore in the land itself so as to vest in them the general or special property in the mineral, with the right of possession, which was essential to maintain an action of replevin. The parol contract in this case, we think, amounts to a lease of the triangular piece of ground for mining purposes, with the minerals or lead ore therein comprised. And the contest is not between the owner of the land and the lessees, but between the lessees and trespassers. See the case of *Beatty v. Gregory*, 17 Iowa, 109.

The view we have taken of the case relieves us from the necessity of considering whether the plaintiffs, upon the facts stated, could maintain the action under the provisions of ch. 260, Laws of 1860, as amended by ch. 117, Laws of 1872. That point was very fully discussed upon the argument; but we express no opinion upon it.

*By the Court.*—The order of the circuit court, overruling the demurrer to the complaint, is affirmed.