LOVELAND, Trustee, Appellant, vs. LONGHENRY and others, Respondents.

*January 12—January 31, 1911.*

*Mining leases: Construction: Conditions: Breach: Forfeiture: Dispute as to lands covered: Judgment: Effect.*

1. Mining leases form a distinct class of instruments, creating special and peculiar legal relations and legal rights.
2. Where a mining lease, granted in consideration of the rents, covenants, and conditions therein agreed to be paid, kept, and performed by the lessee, fixes no time for its expiration and no day for the payment of rents and contains no express provisions for forfeiture, but requires the lessee to prospect the leased lands, to work, develop, and operate any mine or mines

discovered thereon, and to pay as rent one tenth part of the value of all ores and minerals discovered and mined, the covenant to prospect the land will be held to be a condition, upon breach of which the lessor may declare the lease at an end and enter upon and repossess himself of the land.

3. Such covenant and condition requires diligent and fairly continuous prospecting and search for a mine, so that the landowner will receive something for his land.

4. Where the lessee under such a lease, without having discovered a mine, discontinued prospecting operations on September 1, 1907, and had carried on no further work thereon up to November 13, 1908, this was a sufficient breach of the condition to authorize the lessor to terminate the lease by notice and entry.

5. Such delay and suspension of operations was for an unreasonable time; and it is not sufficient excuse therefor that the lessee was without means to carry on the prospecting work.

6. After forfeiture for breach of condition is complete, the lessor may, without waiving such forfeiture or breach, offer to allow the lessee to retain part of the leased premises on condition that he will acquiesce in the forfeiture as to the remainder.

7. Where, in an attempt to settle a controversy with respect to title between a tenant in possession and a lessor, a new lease is executed, and such new lease covers only part of the lands in controversy, and the parties cannot agree as to what was intended to be covered thereby, but both stand upon their rights at law, without seeking reformation, and both claim rights under the new lease as to the lands actually covered thereby, the lands not covered by the new lease must stand upon the former title, lease, or license, which will not be deemed to have been displaced by the execution of such new lease as to any tract not included therein.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Modified and affirmed.*

Action by a lessee to enjoin repeated and continuous trespass on its leasehold by the landlord and those claiming under him. Defense that the lease was terminated by forfeiture. The appeal is from a judgment dismissing the complaint.

For the appellant there was a brief by *Richmond, Jackman & Swansen,* attorneys, and *T. L. Cleary,* of counsel, and oral argument by *S. T. Swansen.* They cited *Ganter v. Atkin-*

*son,* 35 Wis. 48; *Rowlands v. Voechting,* 115 Wis. 352,
91 N. W. 990; *Horner v. C., M. & St. P. R. Co.* 38 Wis.
165; *Bogie v. Bogie,* 41 Wis. 209; *Bergland v. Frawley,* 72
Wis. 559, 40 N. W. 372; *Hartung v. Witte,* 59 Wis. 285, 18
N. W. 175; *Behling v. N. W. Nat. L. Ins. Co.* 117 Wis. 24,
93 N. W. 800; *Drew v. Baldwin,* 48 Wis. 529, 4 N. W. 576;
*Sunday Lake M. Co. v. Wakefield,* 72 Wis. 204, 39 N. W.
136; *Hummer v. McGee,* 141 Wis. 216, 124 N. W. 302;
*Sobey v. Thomas,* 39 Wis. 317; *Raisbeck v. Anthony,* 73 Wis.
572, 41 N. W. 72; *St. Anthony M. & M. Co. v. Shaffra,* 138
Wis. 507, 120 N. W. 238; *Tipping v. Robbins,* 71 Wis. 507
37 N. W. 427; White, Mines & Min. Rem. §§ 134, 123, 125
87, 249, 250, 253, 263, 251, 244; and other authorities.

For the respondents there was a brief by *Kopp & Brunck-
horst* and *Thomas & Hackney,* and oral argument by *Thomas
Hackney* and *L. A. Brunckhorst.* They cited and relied
upon many of the foregoing cases; also *Maginnis v. Knicker-
bocker I. Co.* 112 Wis. 385, 88 N. W. 300; *Glocke v. Glocke,*
113 Wis. 303, 89 N. W. 118; *Western L. & C. Co. v. Copper
River L. Co.* 138 Wis. 404, 120 N. W. 277; *Hicks v. Smith,*
77 Wis. 146, 46 N. W. 133; *Peshtigo L. Co. v. Ellis,* 122
Wis. 433, 100 N. W. 834; *Wanner v. Wanner,* 115 Wis. 196,
91 N. W. 671; *Burgson v. Jacobson,* 124 Wis. 295, 102 N.
W. 563; *Brown v. Kayser,* 60 Wis. 1, 8; and other cases and
authorities.

Timlin, J. The defendant *Longhenry* is the owner in fee
of several adjoining tracts of mineral-bearing land, and on
December 6, 1906, executed and delivered to the Grant
County Mining Company an instrument in writing by the
terms of which, "in consideration of the rents, covenants, and
conditions herein agreed to be paid, kept, and performed by
the party of the second part," he leased and let for mining
purposes three parcels or tracts of this land. To the first de-
scribed parcel, viz. lot 32, he had no title, and it was prob-

ably inserted in the lease by mistake. The second parcel is part of lot No. 37, and the third parcel is part of a tract which we may designate and which was known as the "Nagel tract." The instrument further provided that the lessee should "commence operations on said premises on or before the first day of July, 1907, and thereafter is to prospect said lands and work, develop, and operate any mine or mines discovered on said land in a good, reasonable, and minerlike manner for at least nine months in each and every year, subject, however, to strikes, delays of carriers, and breakages of machinery and other causes beyond the control of the second party." The lessor retained surface rights except such as would be necessary for sinking shafts, equipping machinery, and raising ore. Provision for payment was as follows:

"The party of the second part agrees to and with the party of the first part to pay him as rents and tributes for the uses, rights, and privileges hereby given one tenth part of the value at the railroad of all lead, drybone, zinc, and other ores and minerals discovered and mined in and upon said premises."

It is noticeable that the lease fixed no time for its expiration, fixed no day for the payment of rents or tributes, and contained no express provisions for forfeiture.

Sec. 1647, Stats. (1898), reads:

"Where there is no contract between the parties or terms established by the landlord to the contrary the following rules and regulations shall be applied to mining contracts and leases for the digging of ores and minerals."

Then follow certain rules and regulations which may or may not be of great importance, depending upon whether or not the proofs bring the undisclosed titles within one or the other of the two cases mentioned in the statute above quoted. It appears very clearly that prior to the execution of the written lease in question the mining company and its grantors or assignors were occupying these *Longhenry* lands under other licenses or leases, oral or written. The terms and con-

ditions of these leases or licenses are not all in evidence. We cannot ascertain whether they were one or several, nor, if several, what lands were covered by each. These things are essential because of the statute above quoted and because it seems that a discovery was made on lot 34, but whether there was a separate license or lease on that lot, or whether it was included with others, cannot be ascertained from the evidence. There is no evidence of mining customs, so that it is impossible to say whether the mining company is entitled to hold lot 34 under the statute, or how much more if any more, nor, if there was a lease or license, what were its terms or conditions as to all the lands not covered by the written lease in question. It appears that the written lease in question was given and received in an attempt to settle a previously existing controversy between the parties. There is no attempt at reformation. The parties do not agree with reference to what other land the written lease in question was intended to cover. But it is undisputed that it was intended to cover lot 37 and the Nagel tract. It is admitted that it fails to conform to the intention of the parties, but what was this intention is not clearly shown, so that the elder claim; right, or title, whatever it was, to all lands not described in the written lease was not displaced by this written lease. All this is obvious and undisputed. The learned circuit court no doubt observed this, but considered it immaterial because the defendant *Longhenry* at the trial took the ground that he would not exact a forfeiture of lot 34, which lies north of Grant street, nor of any land north of Grant street, which also includes all the land from which any rent or tribute was ever due and several parcels of land not covered but intended to be covered by the written lease. It is, however, highly important that the rights of the parties be not concluded by the decree herein as to any lands or titles not actually covered by the written lease, because these rights have not been adequately presented on either side. *Longhenry* does not appeal

from the decree, so that the release or waiver of forfeiture of part of the land covered by the written lease in question, not being injurious to the appellant, should not be disturbed unless such release operated to waive the forfeiture as to all the land so covered. *Longhenry* in his notice of declaration of intention to consider the lease at an end which he served on the mining company November 13, 1908, includes other lands not held of him by the mining company under the written lease in question and north and south of Grant street, but as to all such lands not included in the written lease in question the notice must be deemed ineffectual because there is no proof of the terms on which other lands were held, no proof that such terms were breached, and no evidence on which the forfeiture could be upheld, and because the notice of forfeiture relates specially to the written lease and its stipulations. For these reasons it seems best that the decree of the court below be confined to its effect upon the rights of the parties arising out of their written lease of December 6, 1906. The decree below must be limited accordingly, and thus the decree would leave the written lease in question forfeited as to all lands therein described and lying south of Grant street, and in force as to all lands north of Grant street and actually described in the written lease. More specifically the appellant has lost by the decree below all that part of the Nagel tract lying south of Grant street extended.

With reference to the land covered by the written lease the circuit court found on sufficient evidence that the Grant County Mining Company, after entering and beginning work under the written lease in question, discontinued mining operations on or about September 1, 1907, and carried on no further work of this kind until November 14, 1908; "that the delay and neglect to prospect said lands and work, develop, and operate any mine or mines discovered thereon was not caused by strikes, delays of carriers, breakages of machinery, or any other causes beyond the control of the Grant

County Mining Company; that said Grant County Mining
Company did not prospect said lands and work, develop, and
operate any mine or mines discovered on said premises in a
good, reasonable, and minerlike manner or as provided in
said lease." The evidence shows beyond dispute that no mine
and no "crevice or range" containing ore was discovered on
the lands included in the written lease in question. There
is no proof of the usages of miners. After or at the time of
serving his notice of forfeiture *Longhenry* authorized the de-
fendant *Wisconsin Zinc Company* and its employee *Thorne*
to prospect for ore on that part of the Nagel tract covered by
the written lease in question, and the Grant County Mining
Company brought this suit for an injunction against *Long-
henry,* the *Wisconsin Zinc Company,* and *Thorne* to restrain
repeated and continuous trespasses in so doing. While the
suit was pending the Grant County Mining Company became
bankrupt and the action is now prosecuted by its assignee in
bankruptcy. The circuit court denied any relief to the
plaintiff and dismissed its complaint.

.We may leave out of consideration the failure to pay rent
or tribute on ore mined because there was no ore mined on
any land covered by the written lease in question. We may
also leave out of consideration any failure to "work, develop,
and operate any mine or mines discovered on said land in a
good, reasonable, and minerlike manner for at least nine
months in each and every year," because there was no mine
discovered on any land covered by said written lease. This
leaves the only default of the plaintiff to consist of suspend-
ing prospecting operations on said land from September 1,
1907, to November 14, 1908. The lease is expressly given in
consideration of the rents to be received and the covenants
and conditions to be performed by the lessee. No rent would
ever become due if no ore was discovered and mined. No ore
would be discovered without prospecting. One of the stipu-
lations of the lease, going to the whole consideration and de-

scribed therein as a covenant and condition, was that the lessee should after July 1, 1907, prospect the lands. This meant diligent and fairly continuous prospecting and search for a mine so that the landowner would receive something for his land. While analogies arising from urban or agricultural leases are not to be wholly rejected, it must be remembered that these mining leases form a distinct class of instruments, creating special and peculiar legal relations and legal rights. In *Maxwell v. Todd,* 112 N. C. 677, 16 S. E. 926, the mining lease had a fixed term of ninety-nine years, but otherwise it was very similar in terms to the lease in the instant case. The court, noticing that there was in the lease no stipulation for forfeiture for failure to open and work the mines, held that the construction which the law put on the lease would be the same as if such stipulation had been expressly written therein. The contrary construction would prevent the lessor from getting his tolls under the express covenant to pay the same and at the same time deprive him of all opportunity to work the mine himself or lease it to others. In *Starn v. Huffman,* 62 W. Va. 422, 59 S. E. 179, there was a mining lease from Starn to Huffman for one year and as much longer as Huffman should continue to work the mine, the lessee to pay ten cents per ton for all coal mined and begin mining coal on or before December 19, 1902, and pay for said coal every thirty days. There was nothing in the form of a condition and no express stipulation for forfeiture. Nothing was done under the lease, and it was held that this called for a termination of the lease. Many cases are collected and reviewed in the opinion of the court. See, also, *Shenandoah L. & A. C. Co. v. Hise,* 92 Va. 238, 23 S. E. 303; *Western Pa. G. Co. v. George,* 161 Pa. St. 47, 28 Atl. 1004; *Woodward v. Mitchell,* 140 Ind. 406, 39 N. E. 437; *Huggins v. Daley,* 99 Fed. 606, 48 L. R. A. 320; 20 Am. & Eng. Ency. of Law (2d ed.) 779, 780, 781; 26 Cyc. 708, 709, and cases.

In *Island C. Co. v. Combs,* 152 Ind. 379, 53 N. E. 452, it is said:

"In leases of mineral lands, of the nature of the one in question; where the lessee agrees to pay to the lessor a royalty or rent, which depends on the amount of coal or other product mined, the lessee thereby, in the absence of any provision to the contrary, impliedly obligates himself to begin the development of the coal, and the mining thereof, within a reasonable time after the execution of the lease. As to what may be regarded as·a reasonable time, however, depends upon the circumstances of the particular case."

The application of a cognate principle is discernible in *Western L. & C. Co. v. Copper River L. Co.* 138 Wis. 404, 120 N. W. 277. *Horner v. C., M. & St. P. R. Co.* 38 Wis. 165, contains these words:

"(1) Although there are technical words, which, if used in a conveyance, unmistakably create a condition, yet the use thereof is not absolutely essential to that end, and a valid condition may be expressed without employing those words. (2) It is not essential to a valid condition that, in case of a breach thereof, a right of re-entry be expressly reserved in the deed, or that it be expressed therein that the estate of the grantee shall terminate with a breach of the condition."

Applying these abstract rules we say in the instant case: Where a mining lease is granted upon the consideration that the lessee shall observe the covenants and conditions thereof, and the lessee covenants to prospect the land and in case he discovers a mine pay the lessor rent, royalty, or tribute based upon the ore mined from such mine if discovered, the covenant to prospect the mine is in the nature of·a condition and the lessee must proceed with and persist in prospecting with reasonable diligence and continuity of effort. Was the delay of the lessee in the instant case unreasonable? In *Norway v. Rowe.* 19 Ves. Jr. 144, it was averred in the bill, and apparently assumed to be correct by the court and counsel, that by the custom of Cornwall suspension of operations by pros-

pectors or adventurers for a year and a day was ground for forfeiture of their interest in the mineral land. McSwinney accepts this as proof of the custom of Cornwall in his excellent treatise on Mines. In this age and country of greater hurry and activity the limit of suspension of prospecting should without sufficient excuse certainly not exceed that. The finding of the learned circuit court, whose circuit includes the most ancient and active mining district in this state, also supports the conclusion that the delay in the instant case was unreasonable. We are, aside from authority and foreign customs, disposed to agree with this determination. We find no sufficient excuse for the delay in the fact that the lessee was without means to carry on the prospecting work.

The only remaining question is whether the forfeiture which resulted from failure to persist in prospecting with reasonable diligence and continuity was waived as to that part of the Nagel tract south of Grant street because the lessor did not insist on a forfeiture of all the land covered by the written lease in question. The alleged waiver consists of a paragraph in the answer of defendants as follows: "That the defendant *Martin Longhenry* is still willing to make, execute, and deliver to the plaintiff a new mining lease to the northerly part of said premises so as not to interfere in any manner or form with the plaintiff's enjoyment of its mining lease," together with some evidence of conversations between lessor and agents of lessee. This unusual averment in the answer seems to be put forward as a sort of consolation to the lessee for the forfeiture declared by *Longhenry*—a salve for the wounded conscience of the lessor, or a modified form of donation for expiation not unknown in history or in our day. The legal guilt of the lessor cannot logically be inferred from such act, because it is often prompted by tenderness rather than a sense of wrongdoing. No doubt this could not be done against the will of the lessee in an ordinary lease bind-

ing the lessee to payments or other obligations which he might not be willing to assume as to part of the demised premises. But even then it could be done by consent of parties. In a mining lease this offer, after a forfeiture is complete, to waive the forfeiture as to part of the premises seeks to impose no obligation or duty upon the lessee, but merely to give him the option to hold the remainder of the demised tract and prospect it if he chose or abandon it without expense or liability. This offer by the lessor is made after a forfeiture is incurred and declared, and was in effect, as the evidence here shows, conditioned upon the lessee acquiescing in the forfeiture and accepting back under his lease a part of his former leasehold. The evidence on this point is not in conflict, and the finding is that the lessor waived his right to insist on a forfeiture as to the lots covered by the lease and intended to be covered thereby lying north of Grant street. So far as this relates to lands "intended to be covered," these were apparently the most valuable lands of the lessee, on which it had done most of its work and made some apparent discoveries and which it held under some other license or lease. The other lands must be considered as covered by a conditional offer to waive the forfeiture, which the lessee did not accept, but which was carried forward into the litigation, wherein the trial court upheld the forfeiture but took the lessor at his offer and decreed the forfeiture waived as to lands north of Grant street. This was probably error, because it gave the lessee the benefit of the waiver without consenting to the condition of his acquiescing in the forfeiture as to the remainder of the tract, but it was error of which the lessee cannot complain, and the lessor has not appealed.

The decree of the court below must be so modified as to exclude from its confirmation of forfeiture all lands not described in the written lease of December 6, 1906, and as so modified affirmed.

*By the Court.*—Judgment modified and affirmed, with costs.