## In re FASHION TWO TWENTY, INC., Debtor.

### Bankruptcy No. B 81–05107.

United States Bankruptcy Court, N. D. Ohio, E. D.

Jan. 22, 1982.

Maurice M. Sayre and Michael E. Mears, Cleveland, Ohio, for Fashion Two Twenty.

Thomas C. Pavlik, Mary Ann Rabin and John Papandreas, Cleveland, Ohio, for respondents.

## MEMORANDUM OF OPINION AND DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

This cause came on for hearing upon a "Motion for Order Authorizing Rejection of Executory Contracts" filed by the Chapter 11 debtor, Fashion Two Twenty, Inc.

Upon the evidence and counsels' arguments and briefs, the Court finds the facts as follows:

Fashion Two Twenty, Inc., hereinafter FTT, was founded in 1962. They manufacture a line of cosmetic products marketed to residences through an organization of distributors. The distributors are independent contractors with whom FTT has contractual agreements written from May 10, 1962 through November 1, 1980. There are approximately 600 distributors consisting of four categories; namely, Directors, Assistant Directors, Branch Managers and Beauty Consultants. For purposes of this memorandum only the contracts with the 83 Directors are being considered.

FTT has recently encountered financial difficulties which necessitated filing a voluntary petition under Chapter 11 of the Bankruptcy Code on December 10, 1981. On December 15, 1981 FTT filed the within Motion accompanied by copies of the Directors' contracts. (Exhibits A–1 through 83). These contracts are entitled either "Director Sales Agreements" or "Franchise Agreements". The duties and obligations undertaken by the parties in each contract are basically identical.

The Directors paid FTT a specified sum, usually $10,000.00, for which they received an exclusive right to establish and maintain a place of business for resale of FTT products within a designated geographic territory. The contracts set forth mutual ongoing, unperformed obligations or future acts. FTT must continue to sell its line of products to the Directors. The Directors are bound to maintain studios in the specified territories, continue to put forth their best efforts to sell FTT's products and purchase a minimum of $4,000.00 per month of FTT's

line of merchandise. The contracts contain no termination clause.

FTT sells its products to Directors at a base discount established in 1962 at 70% off the suggested retail price. Additional incentives are available which can raise the discount to 80.5%. In addition to discounts, FTT pays distributors who sponsor other distributors a 10% overriding commission on the latter's sales. FTT also sells to the Associate Directors, Branch Managers and Consultants at various discount levels. The average discount to distributors, however, including the override commissions, is 72%. The industry average for comparable businesses is 52%. FTT, therefore, operates at an approximate 20% competitive disadvantage, a financial burden which can not be endured.

At the 72% discount structure FTT is not a viable company. Because of this structure FTT has never been more than marginally profitable. In recent years this small margin, approximately 4%, has been eroded by the discount onus and burgeoning inflation which created losses. If the discount structure were competitive with the industry norm, FTT's losses would have been transformed into profits.

FTT's gross sales have been declining significantly. Even at projected increased sales, however, the present discount structure would still produce losses; i.e., a 25% sales increase would reflect a $2 million loss, a 50% increase a $1.4 million loss and a 70% increase a $.9 million loss. With the 52% industry discount, FTT would have been profitable and more importantly, viable.

## APPLICABLE LAW AND COMMENTS

Section 365(a) of the Bankruptcy Code (11 U.S.C. § 365) states, in part, "... the trustee (debtor-in-possession), subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

"The concept of the rejection of executory contracts had its roots in the principle that a trustee in bankruptcy might renounce title to and abandon burdensome property." *2 Collier on Bankruptcy, ¶ 365.-01 (15th Ed. 1981).*

■ The Legislative History of Section 365 states, inter alia, "Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." *House Report No. 95–595, 95th Congress, 1st Session (1977) 347; Senate Report No. 95–989, 95th Congress, 2nd Session (1978) 58,* U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303, 5844. This mutuality of performance concept was best enunciated by Professor Vern Countryman who reasoned, "A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other." *Countryman, Executory Contracts in Bankruptcy, 57 Minn.L.Rev. 439 (1974) at p. 460.*

■ The Courts have generally accepted and applied the Countryman definition which this Court also adopts for purposes of this Memorandum. The parties to these contracts obviously have substantial and material unperformed obligations to fulfill. Failure to perform by either party would constitute a material breach. Respondents maintain the contracts were wholly executed upon payment for and receipt of the exclusive territories. In reality, Directors' payments represented partial consideration. The Directors have considerable ongoing obligations including the duties to maintain a studio, use their best efforts in re-selling FTT products and purchase a minimum of $4,000.00 of FTT products each month. Conversely, FTT has the continuing obligation to sell its products to the Directors. Failure to perform by either party would constitute a material breach excusing performance of the other. Based on the mutuality of unperformed obligations, the contracts unquestionably are within the intended definition of executory contracts under Section 365 and subject to rejection.

There is ample case law to support the conclusion that the within contracts are executory. See *Fenix Cattle Co. v. Silver (In re Select-a-Seat Corp.), 625 F.2d 290, (9th Cir. 1980), Burger King Corp. v. Rovine Corp. (In re Rovine Corp.), 6 B.R. 661, (Bkrtcy.W.D.Tenn.W.D.1980),* and *In re Sun Ray Bakery, Inc., 5 B.R. 670, (Bkrtcy.D. Mass.1980).* In these cases the non-debtor party had paid the debtor a sum of money to purchase a license or franchise. The Courts held as does this Court, that despite payment of a substantial initial fee, remaining obligations were sufficient to render the contracts executory.

■ Having determined the executory aspect of the agreements, the Court is next confronted with applying the appropriate standard to approve rejection. Respondents contend the so-called "burdensome" test is applicable while the debtor employs the "business judgment" approach. The "burdensome" test requires an actual drain of estate assets which, in fact, is evident from the contracts. The less rigid "business judgment" is favored by most Courts and is adopted as the proper standard herein. See *Control Data Corp. v. Zelman (In the Matter of Minges), 602 F.2d 38, (2nd Cir. 1979)* and *Carey v. Mobil Oil Corp. (In the Matter of Tilco, Inc.), 558 F.2d 1369, (10th Cir. 1977).* More recently under the Bankruptcy Code see *In re J. H. Land and Cattle Co., Inc., 8 B.R. 237, 7 B.C.D. 228, (Bkrtcy.W.D. Okla.1981).*

■ The evidence reflects that FTT is not a profitable or viable enterprise, presently or in the recent past. This condition, in great part, is attributed to the excessive discounts afforded Directors. These discounts established in 1962 being 20% higher than, and non-competitive with, industry norms impose an obvious drain on corporate assets. Projected increased sales up to 70% with the present discount structure would still produce losses. In reality, gross sales have declined. In summary, FTT has clearly demonstrated, and the Court approves, the exercise of sound business judgment to support rejection of these onerous contracts which produced non-viability. In fact, the evidence is so overwhelming that application of the more stringent "burdensome" standard would still compel the same conclusion.

Respondents allege corporate mismanagement, extravagance, in-fighting and other reasons for FTT's present financial condition. The evidence, however, refutes these unpersuasive contentions. A debtor's financial plight and need for reorganization generally result from various factors which is undoubtedly true with FTT. The fact remains, however, that the devastating discount structure is the primary cause of its financial difficulties. To structure a viable company through a successful reorganization requires rejection of the Directors' executory contracts.

### CONCLUSIONS

1. The 83 contracts between FTT and the Directors are executory as required by Section 365 of the Bankruptcy Code.

2. FTT exercised sound "business judgment" in seeking authority to reject the executory contracts in question.

3. The debtor-in-possession's rejection of the executory contracts between FTT and the Directors is approved.