In the Matter of Paal MYKLEBUST and Ragnhild Myklebust, Debtors.

Bankruptcy No. MM11–81–01101.

United States Bankruptcy Court, W.D. Wisconsin.

Jan. 25, 1983.

Carl J. Rasmussen, Boardman, Suhr, Curry & Field, Madison, Wis., for debtors.

Christopher G. Wren, Tod B. Linstroth, Michael, Best & Friedrich, Madison, Wis., for creditor Edward Kraemer & Sons, Inc.

ROBERT D. MARTIN, Bankruptcy Judge.

In November of 1975, chapter 11 debtors Paal and Ragnhild Myklebust entered into a mineral lease with Edward Kraemer & Sons, Inc. (Kraemer). The lease was to run for ten years from July 23, 1976. The terms of the lease required Kraemer to pay debtors a minimum of $10,000 in $2,000 installments over the first five years of the lease, along with a royalty, which is currently 23 cents per cubic yard of sand and gravel extracted. Additionally, Kraemer was given a right of first refusal to purchase the property covered by the lease. The debtors have filed a motion to reject the lease under 11 U.S.C. § 365(a), and Kraemer has filed an objection.

A preliminary dispute in this case is whether the mineral lease should be treated as an executory contract or an unexpired lease. If the agreement is an unexpired lease, then pursuant to 11 U.S.C. § 365(h)(1), Kraemer has the option of remaining in possession and off-setting the rent due by the amount of damages arising from rejection. Whether the agreement is an unexpired lease or an executory contract is determined under state law. *See In Re J.H. Land & Cattle Co.,* 8 B.R. 237 (Bkrtcy. W.D.Okl.1981).

In support of their contention that the mineral lease is an executory contract, debtors cite *Loveland v. Longhenry,* 145 Wis. 60, 129 N.W. 650 (1911) in which the Wisconsin Court stated:

> While analogies arising from urban or agricultural leases are not to be wholly rejected, it must be remembered that these mining leases form a distinct class of instruments, creating special and peculiar legal relations and legal rights.

145 Wis. at 67, 129 N.W. 650.

The special rights in that case were found to be an implied obligation to mine, arising

from a covenant to pay royalties. The *Loveland* court did not address the question whether under Wisconsin law a mineral lease is an executory contract or an interest in real property. In *Chicago & N.W. Transportation v. Pedersen,* 80 Wis.2d 566, 259 N.W.2d 316 (1977), the Wisconsin court considered the constitutionality of a statute requiring registration of mineral interests, and stated in dicta:

> Mineral rights are an interest in land which may be created or transferred as any other estate in land.

80 Wis.2d at 571, 259 N.W.2d 316.

The court cited *Ganter v. Atkinson,* 35 Wis. 48 (1874) which held that a mineral lease was an interest in land. Based upon *Ganter* and *Chicago & N.W. Transportation,* the court must conclude that the agreement in the present case should be treated as an unexpired lease.

■ The next question presented is whether the debtors should be allowed to reject the lease. Code section 365(a) provides that an unexpired lease may be rejected "subject to the court's approval." The Code does not provide any guidance to the court in granting or withholding approval. Courts that have considered the question have adopted a "business judgment test," in which a trustee or debtor in possession does not have an absolute right to reject, but does not have to show that the agreement is a burden on the estate. *See In Re Huang,* 23 B.R. 798, 9 B.C.D. 972 (Bkrtcy.App. 9th Cir.1982); *In Re Sombrero Reef Club,* 18 B.R. 612, 8 B.C.D. 1277, 1280 (Bkrtcy.S.D. Fla.1982); *In Re Fashion Two Twenty, Inc.,* 16 B.R. 784, 8 B.C.D. 839, 841 (Bkrtcy.N.D. Ohio 1982); *In Re Hurricane Elkhorn Coal Corp.,* 15 B.R. 987, 989 (Bkrtcy.W.D.Ky. 1981); *In Re J.H. Land & Cattle Co.,* 8 B.R. 237, 238–39 (Bkrtcy.W.D.Okl.1981). The business judgment test requires some showing that rejection will benefit the estate or the reorganization effort.

The cases cited above adopting the business judgment test emphasize that the test is liberally applied, and that the decision to reject should ordinarily be approved. In each of those cases, however, there was evidence showing that a more profitable arrangement was available to the debtor.

The evidence produced at hearing in this case focused on Kraemer's current operation of the gravel pit, and the potential for increased use of the pit. Debtors' sole witness was Mrs. Myklebust, who testified that she did not believe Kraemer was making its best efforts to sell gravel from the pit, and that three other companies were interested in obtaining the mineral rights. Mrs. Myklebust has no firsthand knowledge of the costs of operation of the pit, and had no firm offers from the interested parties.

Kraemer's witnesses from the Wisconsin Department of Transportation and the Sauk County Highway Department rebutted representations made by Mrs. Myklebust that planned road construction projects would lead to increased demand for gravel from the pit. In addition, Mr. William Kraemer, a vice-president of Kraemer & Sons testified about Kraemer's operation generally, and the relative cost of operating the Myklebust pit. He stated that Kraemer was the largest gravel supplier in Wisconsin, gravel is abundant throughout Wisconsin, and there were other gravel pits in the area. He also explained how the cost of hauling represents a major component in the cost of gravel and significantly limits the area in which gravel from a given pit can be competitively sold. This testimony suggests that if any highway construction bids were let, Kraemer would be as likely as any other company to supply the gravel, and that the source of the gravel would depend on the location of the project. Kraemer further testified that the Myklebust pit, while providing excellent quality gravel, was relatively expensive to operate. The cost factors suggest why the Myklebust pit is put to limited use by Kraemer, but the same costs would be experienced by any other prospective lessee. Finally, there was testimony that Kraemer has approximately $80,000 invested in the pit. If allowed to reject the lease, debtors could be forced to compensate Kraemer for damages arising from rejection, which might include recovery of Kraemer's investment.

A review of the evidence shows little if any potential advantage to debtors' reorganization in rejecting the mineral lease, and considerable risk of loss if new leases or sales did not provide a sufficient premium to offset potential damages involved in the rejection. Debtors seek to reject a lease under which they received a total of $12,000 in royalties in 1981, offering only speculation that they might do better under another lease or a sale of the property. The court concludes that the debtors have failed to satisfy the business judgment test, and that rejection of the lease cannot be approved under 11 U.S.C. § 365(a).

Debtors also request that the court approve rejection of Kraemer's right of first refusal. Kraemer contends that the right is a term of the lease, not severable for purposes of rejection under 11 U.S.C. § 365. Whether the provision is severable or not, there was no reliable evidence that rejection of the right would benefit the estate. In the absence of any such evidence, the court cannot approve rejection.

The motion is denied.