## In re PETUR U.S.A. INSTRUMENT CO., INC., Debtor.

### Bankruptcy No. 83-02043.

United States Bankruptcy Court,
W.D. Washington.

Nov. 30, 1983.

William S. Weinstein, Roberts & Shefelman, Seattle, Wash., for debtor.

Jeffrey L. Jernegan, Moriarty, Mikkelborg, Broz, Wells & Fryer, Seattle, Wash., for creditor.

## OPINION ON MOTION TO AUTHORIZE REJECTION OF EXECUTORY CONTRACT

SAMUEL J. STEINER, Bankruptcy Judge.

This matter is before the Court on the debtor's motion to reject an executory contract. The primary issue is whether rejection should be allowed when it will result in the destruction of the business of the non-debtor party.

### FACTS

The debtor's principal, Petur Thordarson, is an inventor of geotechnical instruments.

4. The decision in *Pacemaker* was set for an *en banc* hearing for reconsideration on November 15, 1983.

The inventions have been patented. The debtor, Petur U.S.A. Instruments Company, Inc. (Petur USA), was formed in 1976 to market the inventions.

The non-debtor party, Petur Instruments, Ltd. (Petur of Canada), is a closely held Canadian corporation formed solely for the purpose of marketing the debtor's products in Canada. Mr. Robert Straghan and his two sons are the only shareholders and individuals in interest.

On October 6, 1978, the parties entered into a twenty-year license agreement pursuant to which Petur USA granted to Petur of Canada the exclusive right to use, manufacture, assemble, and sell the inventions and related components in Canada, with the debtor providing the necessary techniques and know-how plus sixteen hours of monthly consulting services. The contract also gave Petur of Canada the right to purchase units from the debtor at a specified percentage of production cost and the right to use the debtor's trademark. In consideration for the license, Petur of Canada paid the debtor $100,000 and agreed to pay royalties to be computed on three percent of its gross sales.

Operations under the agreement commenced. However, disputes arose. In an effort to settle the problems, the parties signed a Memorandum of Understanding on September 30, 1980. Notwithstanding their efforts, the relationship between the two continued to deteriorate with claims and counterclaims asserted by both. For some time, the parties have been on the verge of litigation.

Except for one year in which the debtor's business made a small profit, it continuously has shown a significant loss and its future profitability depends on the outcome of this Chapter 11 case.

On the other hand, Petur of Canada has been successful. Except for its 1978 and 1979 fiscal years in which it sustained net losses of $103 and $180, Petur of Canada has shown the following profits:

| Date (End of Fiscal Year - March 31) | Gross Sales | Net Income After All Expenses and Wages |
|---|---|---|
| 1980 | $217,819.00 | $32,144.00 |
| 1981 | $297,283.00 | $28,376.00 |
| 1982 | $475,780.00 | $79,875.00 |
| 1983 | $372,887.00 | $59,312.00 |

During the fiscal year ending March 31, 1983, the Straghans drew salaries from the corporation of $105,000, which left the net profit of $59,312.

All of Petur of Canada's business and income is based upon the license agreement with the debtor.

The debtor contends that entering into the license agreement was improvident on its part; that the agreement is the single and most significant cause of its financial problems; that it is burdensome; and that, if rejected, the debtor will be the beneficiary of the substantial income available from the Canadian market and projects yearly sales in Canada of $500,000 to $700,000 per year and profits from such sales of $200,000 to $280,000 per year. The debtor further contends that the contract is executory, that rejection is subject to its business judgment, and that the profits from the Canadian market would be in its best interests and would enable it to reorganize and pay its creditors in full within two years.

Petur of Canada argues that the contract is not executory, that the debtor's financial problems have been due to inept management which shows no signs of improvement, that it is just a matter of time before the debtor will be in Chapter 7, and that it is unlikely if not impossible for the debtor to meet the sales projections or to improve upon its established sales performance. Petur of Canada has projected profits for the remaining term of the agreement of $2,616,000 and points out that, if rejection is granted, its business will be destroyed and its ensuing damages will far outweigh any benefit to the debtor or to its creditors.

Petur of Canada also contends that the assignment of the patents by Mr. Thordarson to the Rainier National Bank to secure borrowings and certain aspects of patent law preclude the rejection of the contract.

These arguments are not well taken; and in view of the following discussion, they are not material to the Court's decision and will not be discussed.

## DISCUSSION

■ The Code does not define the term "executory contract". However, the legislative history indicates that the term generally includes contracts under which performance remains due to some extent on both sides. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977); and see S.Rep. No. 95–989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. In this instance, the Court concludes that the license agreement is an executory contract. The debtor is under a number of continuing obligations, including providing product, information and know-how, and consulting services. Conversely, Petur of Canada is obligated to pay royalties on sales for the remaining term of the agreement. The failure to perform by either party would constitute a material breach excusing performance by the other.

When considering the rejection of an executory contract, the great weight of modern authority applies the "business judgment" test rather than the so-called "burdensome" test. See In re Chi-Feng Huang, 23 B.R. 798 (Bkrtcy.App. 9th Cir.1982); In re Fashion Two Twenty, Inc., 16 B.R. 784 (Bkrtcy.N.D.Ohio 1982); In re Hurricane Elkhorn Coal Corp. II, 15 B.R. 987 (Bkrtcy. W.D.Ky.1981); In re Marina Enterprises, Inc., 14 B.R. 327, 5 C.B.C.2d 434 (Bkrtcy.S. D.Fla.1981); In re J.H. Land & Cattle Co., 3 C.B.C.2d 695 (W.D.Okl.1981); In re Minges, 602 F.2d 38 (2d Cir.1979); and In re Tilco, 558 F.2d 1369 (10th Cir.1977).

In this case, the debtor has exercised its business judgment; and in so doing has determined that its best interests and those of its creditors will be served by rejection. The decision is based upon the non-profitability of the present arrangement and upon the possibility of obtaining the projected large profits supposedly available from the Canadian market.

Notwithstanding the fact that the debtor may have management problems and that its projections may be overly optimistic, the Court concludes that the debtor has properly exercised its business judgment and that rejection could well create additional profits and aid in reorganization.

■ However, the entire business of Petur of Canada is based upon the executory contract. If the debtor's motion is granted, Petur of Canada will be forced out of business. Based upon legal and equitable considerations, the Court will not authorize rejection with such a result.

In the case of In re Chi-Feng Huang, 23 B.R. at 801, the Ninth Circuit Bankruptcy Appellate Panel stated: "It is proper for the court to refuse to authorize rejection of a lease or executory contract where the party whose contract is to be rejected would be damaged disproportionately to any benefit to be derived by the general creditors of the estate...." This Court concludes that the rejection of the license agreement, resulting in the destruction of Petur of Canada and the ensuing damages to it (a $2,616,000 claim, if allowed with dividends being conjectural) would be grossly disproportionate to any benefit derived by the general creditors.

■ Further, a bankruptcy court is a court of equity. It is well-established that bankruptcy proceedings are equitable in their nature. 1 Collier on Bankruptcy, Section 3.01(5)(b)(ii) (15th Ed.); Bank of Marin v. England, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) (equitable principles govern the exercise of bankruptcy jurisdiction); Securities & Exchange Comm'n v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940) (good sense and legal tradition alike enjoin that an enactment of Congress dealing with bankruptcy should be read in harmony with the existing system of equity jurisprudence of which it is a part); and Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (in the exercise of its equitable jurisdiction the bankruptcy court has not only the power but the duty to see that injustice or unfairness is not done).

Counsel for the debtor has cited a number of cases involving rejection in which harm has resulted to the non-debtor parties. *In re Chi-Feng Huang*, 23 B.R. at 801; *In re Fashion Two Twenty, Inc.*, 16 B.R. 784 (Bkrtcy.N.D.Ohio, 1982); and *In re Select-A-Seat Corp.*, 625 F.2d 290 (9th Cir.1980). But here we are not only dealing with harm resulting from a mere disappointment of legitimate expectations. Rather we are dealing with the actual ruination of an otherwise profitable, successful and ongoing business. Equity will not permit such a result.

The Court's conclusion is supported by several additional factors: First, it is not evident that the debtor will be able to reorganize, even if allowed to reject the contract. Second, more than 120 days have elapsed since this Chapter 11 case was filed, and as yet the debtor has not proposed a plan of reorganization. Third, as indicated above, the profits that the debtor envisions are only projections based on little, if any, experience in the Canadian market. Fourth, there is no evidence of any new capital coming into the debtor. Fifth, the evidence indicates that Petur of Canada has been effective in retailing in the Canadian market and has shown consistent profits over the last four years. There is no evidence indicating a reverse of this trend in the future and it is doubtful if the debtor would be able to do better.

The royalties generated by Petur of Canada should benefit the debtor's estate. On the other hand, the debtor has been operating at a loss. There is no reason to believe that the debtor's marketing strategies, which have been unsuccessful in the United States, would fare better in Canada. Assuming, *arguendo*, that they would, it still would take time to set up a sales program in Canada and it is doubtful that such a program would yield immediate results.

The Court also takes judicial notice that, since the effective date of the Code, only three and one half percent of the hundreds of Chapter 11 cases filed in this District have resulted in confirmed plans; and that most of the cases confirmed involved partial or total liquidation as opposed to reorganization and the continuation of the business. It would indeed be anomalous if the rejection is permitted and if Petur of Canada is then forced out of business, for the debtor to go the way of the ninety-six and one-half percent of this District's Chapter 11 cases.

## CONCLUSION

The Court concludes that the debtor should not be allowed to reject the contract.

This opinion will serve as the Court's Findings of Fact and Conclusions of Law. An appropriate Order will be entered as of this date.