**In re CHIPWICH, INC., Debtor.**

**Bankruptcy No. 84 B 20346.**

United States Bankruptcy Court, S.D. New York.

Oct. 24, 1985.

Angel & Frankel, P.C., New York City, for debtor.

Friedman & Wittenstein, New York City, for Farmland Dairies.

## DECISION ON MOTION TO REJECT FRANCHISE AND LICENSE AGREEMENTS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor in this case, Chipwich, Inc., seeks an order, pursuant to 11 U.S.C. § 365, authorizing it to reject two licensing agreements with Farmland Dairies, Inc. ("Farmland"). The debtor's motion is opposed by Farmland on the ground that the agreements are no longer executory.

### FINDINGS OF FACT

1. An involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed with this court against the debtor, Chipwich, Inc., on August 10, 1984.

2. The debtor then filed a response to the involuntary petition and pursuant to 11 U.S.C. § 706(a), elected to convert the case commenced under Chapter 7 of the Bankruptcy Code to a reorganization under Chapter 11 of the Code. An order for relief under Chapter 11 was entered by this court on August 22, 1984. As a result of the entry of the order for relief, the debtor was put back into possession of its property and the operation and management of its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. The debtor ceased to manufacture "Chipwich" products prior to the commencement of this bankruptcy case. The debtor is now engaged in the business of marketing frozen confections under the registered trademark "Chipwich" through various written licensing and manufacturing agreements pursuant to which the debtor receives royalty payments on units produced and sold by its licensees.

4. On September 20, 1983, the debtor and Farmland entered into a written agreement whereby the debtor granted to Farmland an exclusive franchise and license in the United States to produce, sell, distribute, sub-license, sub-contract, advertise and promote eggnog and flavored milk under the "Chipwich" trademark (the "eggnog license"). Farmland paid the debtor a one-time license fee of $15,000 and is also obliged to pay royalties to the debtor for units sold.

5. On September 28, 1983, the debtor and Farmland entered into a substantially similar written agreement whereby the debtor granted to Farmland the worldwide rights to sell, distribute, sub-license, sub-contract, advertise and promote a dairy shake product under the "Chipwich" trademark (the "dairyshake license"). Farmland paid the debtor a one-time license fee of $75,000 and is also required to pay royalties to the debtor for units sold.

6. Under both licenses the debtor has no responsibilities for advertising, manufacturing or distributing the licensed products. The debtor's obligation under both contracts to grant Farmland a license to exploit the "Chipwich" trademark was performed when Farmland paid the one-time license fee of $15,000 under the eggnog license and $75,000 under the dairy shake license.

7. The eggnog license continues until October 1, 2033. The dairy shake license terminates on December 31, 2082. However, Farmland has an option to renew the dairy shake license for an additional ninety-nine years.

8. Pursuant to paragraph 8.1 in each of the two licenses, the debtor agrees to give prompt written notice to Farmland if, during the term of the licenses, the debtor obtains any information with regard to infringements of the trademark by third parties. In the event of any such infringement, the debtor is obliged under paragraph 8.2 of each license to institute proceedings at its own expense to halt activity, using counsel mutually acceptable to the debtor and to Farmland. In the event that Farmland elects to institute infringement proceedings, the debtor is required under paragraph 8.3 of each license to render any and all assistance which may be reasonably requested by Farmland. Additionally, the debtor is required under paragraph 9 of each license to indemnify Farmland for all loss, expenses, damages, costs and reasonable attorneys' fees incurred by Farmland by reason of any claims or suits brought against Farmland arising out of its use of the licensed trademarks pursuant to the agreements.

9. Under both licensing agreements Farmland is required to pay royalties to the debtor in accordance with the type and number of licensed products sold by it. In addition to furnishing the debtor with a monthly accounting for all products sold, Farmland is required under paragraph 5.2 of each license to keep accurate books of account and records reflecting the licensed sales which records must be open to the debtor's inspection at all reasonable times. Pursuant to paragraph 6 of each license. Farmland is obliged to discontinue marketing and sale of competing products under its own name. Farmland is also required to protect the debtor's rights in the licensed trademarks.

10. At the hearing of this motion on October 21, 1985 the debtor's president testified without contradiction that Farmland's operations under the licenses were unsatisfactory and that it was not in the debtor's best interests to permit the exclusive exploitation of the license rights to remain with Farmland. He further testified that there were other well-known firms who sought the licensed rights in question and that it would serve the debtor's economic interests to be allowed to reject the licenses in question so that the debtor could enter into better contracts with these other firms. Hence, a rejection of the two licenses with Farmland would be advantageous to the debtor.

## DISCUSSION

■ This court has jurisdiction of the subject matter and parties by virtue of 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The debtor's motion to reject the two licenses with Farmland is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) "concerning the administration of the estate." *See In re Republic Oil Corporation,* 51 B.R. 355, 358 (Bankr.W.D.Wis.1985). Accordingly, this court may render a final decision in this matter.

Pursuant to 11 U.S.C. § 365(a) and Bankruptcy Rules 6006 and 9014, a debtor may assume or reject an executory contract with the court's approval. The debtor's rejection of an executory contract constitutes a breach of the contract and gives the other contracting party a claim for damages as if the contract had been rejected immediately before the date of the filing of the petition, as expressed in 11 U.S.C. § 365(g)(1). Thus, as provided in 11 U.S.C. § 502(g), a claim resulting from the rejection of an executory contract does not give rise to a priority expense of administration. In determining whether the debtor should be authorized to reject the two licenses with Farmland, it must first be ascertained if the contracts are executory within the meaning of 11 U.S.C. § 365(a). If the licenses are found to be executory, the question to be determined must then be whether the debtor should be permitted to reject the executory contracts.

## ARE THE LICENSES EXECUTORY?

An executory contract within the context of 11 U.S.C. § 365 was described in the legislative history as follows:

Though there is no precise definition of what contracts are executory, it general-

ly includes contracts on which performance remains due to some extent on both sides.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5844, 6303. This definition follows Professor Countryman's definition of executory contracts under the former Bankruptcy Act:

> [A] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973), cited in *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885, 887 (9th Cir.1982); *Fenix Cattle Company v. Silver (In re Select-A-Seat Corporation)*, 625 F.2d 290, 292 (9th Cir.1980); *Northwest Airlines, Inc., v. Klinger (In re Knutson)*, 563 F.2d 916, 917 (8th Cir.1977). *See also* Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn.L.Rev. 479 (1974).

*Fenix Cattle Company v. Silver*, 625 F.2d at 292 held, that in light of the accepted definition of an executory contract, an obligation of a debtor to refrain from selling software packages under an exclusive licensing agreement made the contract executory as to the debtor. Thus, the fact that the debtor in this case has no responsibility for manufacturing, advertising or distributing the licensed dairy shake, eggnog and flavored milk products does not prevent the contracts from being regarded as executory with respect to both parties. The debtor's right to receive royalty payments must be examined in the context of the duties imposed upon the debtor under those licenses. The debtor owes Farmland a continuing duty to notify Farmland of any infringements of the licensed trademarks; to institute proceedings at its own expense; to halt any such infringements; and, to indemnify Farmland for any dam-

ages, expenses and attorneys' fees incurred by Farmland as a result of suits against Farmland arising out of its use of the licensed products.

In a strikingly similar case, it was held in *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1046 (4th Cir.1985) that a license agreement was executory as to the debtor in that case:

> because of the contingent duties that [the debtor] owed of giving notice of and defending infringement suits and of indemnifying [the licensee] for certain losses arising out of the use of the technology. Contingency of an obligation does not prevent its being executory under § 365.

(citations omitted).

Similarly, the licensee's continuing duty of accounting for, and paying royalties for the life of the agreement meant that the contract was executory as to both parties in that case. The court emphasized the fact that the licensee was required to do more than merely account for and pay royalties. The licensee was also required to deliver written quarterly sales reports and keep books of account subject to inspection. In the instant case, Farmland is similarly required to furnish the debtor with sales reports (on a monthly basis) and to keep books of account and records reflecting the licensed sales which must be open to the debtor's inspection at all reasonable times. Additionally, Farmland is required to protect the debtor's rights in the licensed trademarks. Manifestly, the licenses in the instant case are executory as to both the debtor and Farmland and, therefore, they are executory contracts within the meaning of 11 U.S.C. § 365(a).

### SHOULD REJECTION BE PERMITTED?

In determining whether or not a debtor should be allowed to reject an executory contract, the courts have generally applied the business judgment test and the principle that the debtor's business judgment should not be interfered with, absent

a showing of bad faith or abuse of business discretion. *NLRB v. Bildisco and Bildisco (In re Bildisco)*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); *Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d at 1045; *Control Data Corporation v. Zelman (In re Minges)*, 602 F.2d 38 (2d Cir.1979). In *Control Data Corp. v. Zelman (In re Minges)*, the Second Circuit Court of Appeals said:

It is enough, if, as a matter of business judgment, rejection of the burdensome contract may benefit the estate.

602 F.2d at 43.

██ In the instant case the debtor's management has determined that Farmland's exploitation of the licensed products under the two licenses in question was unsatisfactory and that the debtor's best interests would be served by an authorized rejection of these licenses so that the debtor could enter into better contracts with other well-known firms. It therefore appears that the debtor and its general unsecured creditors will benefit as a result of the debtor's rejection of these licenses. Thus, rejection of the executory contracts would be advantageous to the debtor, notwithstanding that by rejecting the two licenses the debtor will deprive Farmland of its right to use the "Chipwich" trademark for its products. As stated in *Lubrizol Enterprises v. Richmond Metal Finishers, Inc.*, 756 F.2d at 1048:

It cannot be gainsaid that allowing rejection of such contracts as executory imposes serious burdens on contracting parties.... Nor can it be doubted that allowing rejection in this and comparable cases could have a general chilling effect upon the willingness of such parties to contract at all with businesses in possible financial difficulty. But under bankruptcy law such equitable considerations may not be indulged by courts in respect of the type of contract here in issue. Congress has plainly provided for the rejection of executory contracts, notwithstanding the obvious adverse consequences for contracting parties thereby made inevitable.... [Contracting parties] share the general hazards created by § 365 for all business entities dealing with potential bankrupts in the respects at issue here.

Farmland will be entitled to treat rejection as a breach and will have an allowable claim for damages under 11 U.S.C. § 365(g)(1) and § 502(g). There has been no showing that Farmland will be damaged disproportionately to any benefit to be derived by the debtor and the general creditors of the estate, as in *In re Petur U.S.A. Instrument Co., Inc.*, 35 B.R. 561 (Bankr. W.D.Wash.1983), where rejection in that case would have resulted in the nondebtor licensee being forced out of business because the licensee's entire business was based upon the executory contract in question.

## CONCLUSIONS OF LAW

██ 1. This court has jurisdiction of this core proceeding pursuant to 28 U.S.C. § 1334, § 157(a) and § 157(b)(2).

2. The debtor's two licenses with Farmland are executory contracts within the meaning of 11 U.S.C. § 356(a).

3. The debtor may reject the two executory contracts with Farmland in the exercise of its business judgment that such rejection is advantageous to the debtor.

4. Farmland may file an allowable claim for damages resulting from the debtor's breach of contract in accordance with 11 U.S.C. § 365(g)(1) and § 502(g).

SETTLE ORDER on notice in accordance with the foregoing.