## PILLSBURY FLOUR MILLS COMPANY v. LAKE SUPERIOR CONSOLIDATED IRON MINES.[1]

October 4, 1929.

No. 26,486.

*Frank D. Adams, Elmer F. Blu, George Ingersoll* and *Davis, Severance & Morgan,* for appellant.

*Clark Hempstead,* for respondent.

[1]Reported in 226 N. W. 843.

DIBELL, J.

Action to recover royalty on a mining lease. There were findings that the defendant was liable for royalty at 7½ cents per ton on 122,743 tons and 240 pounds taken from the leased property between July 1, 1925, and November 20, 1925, amounting to $9,205.73, together with the sum of $1,406.25, the quarterly instalment of minimum royalty becoming due on October 1, 1925, and the sum of $640.62, the pro rata part of the quarterly instalment of January 1, 1926, to the termination of the lease on February 11, 1926, a total of $11,252.60, and that it was not entitled to a credit for the July 1, 1925, instalment of minimum, amounting to $1,406.25, which it paid. Judgment was entered for $12,505.01, which included accrued interest and costs, and the defendant appeals.

■ The lease involved is in substance the usual mining lease. Such a lease is in fact a lease and not a sale of ore in place, and the rights of the parties are referable to the law of landlord and tenant rather than the law of sales. This was definitely held in State v. Evans, 99 Minn. 220, 108 N. W. 958, 9 Ann. Cas. 520, and has been our consistent holding since. See 4 Dunnell, Minn. Dig. (2 ed.) §§ 6122-6123, and cases cited. The rights of the parties to this controversy are to be worked out with the understanding that the basis of their rights and liabilities is a lease. See State v. Cavour Min. Co. 143 Minn. 271, 173 N. W. 415; State v. Hobart Iron Co. 143 Minn. 457, 172 N. W. 899, 175 N. W. 100, 176 N. W. 758; State ex rel. Inter-State I. Co. v. Armson, 166 Minn. 230, 207 N. W. 727, and cases cited and reviewed.

■ On July 1, 1902, Mart B. Koon and others made a mining lease on a 40-acre tract of land in Itasca county to Henry L. Little and Charles C. Prindle for a 50-year term at a royalty of 20 cents per ton with a provision for a minimum annual output of 75,000 tons. On October 17, 1902, Little and Prindle assigned the lease to the Clairton Steel Company, and on October 31, 1911, the Clairton Steel Company assigned its interest to the defendant, Lake Superior Consolidated Iron Mines. When Little and Prindle assigned to the Clairton Steel Company that company agreed to pay an additional

minimum royalty of 15 cents a ton, 7½ cents per ton to each. The plaintiff, Pillsbury Flour Mills Company, by mesne conveyances acquired the interest of Little.

No mining was done until 1923. In the meantime the minimum royalties were paid to the lessors. During the mining year ending June 30, 1925, the defendant removed from the leased premises 377,757 tons and 360 pounds, for which it paid the agreed royalty in cash or by taking credit for minimum royalties paid in prior years. There were put in stock-pile 122,743 tons and 240 pounds mined from May to November, 1924, and no more ore was mined afterwards. On July 1, 1925, the defendant paid the plaintiff $1,406.25, the quarterly instalment of minimum royalty then becoming due. After that date and before the next instalment became due it shipped this ore. It is conceded that it is liable to pay the royalty of 7½ cents per ton on 122,743 tons plus amounting to $9,205.73. The defendant, proceeding in accordance with the terms of the lease, surrendered its leasehold interest, and the release became effective February 11, 1926. It is conceded that the minimum royalty at 7½ cents per ton from July 1, 1925, to February 11, 1926, was $3,453.12, being the quarterly instalment of July 1, 1925, of $1,406.25, the quarterly instalment of October 1, 1925, of $1,406.25, and a pro rate of the January 1, 1926, instalment from that date to the termination of the lease on February 11, 1926, amounting to $640.62. The defendant claims the right to apply on $9,205.73 the July 1, 1925, instalment of $1,406.25 which it paid, reducing the $9,205.73 to $7,799.48, for which it admits liability; and it claims that the other instalments of minimum royalty of $1,406.25 and $640.62 are not collectible because the agreed royalties of $9,205.73 for the 1925 mining year exceed the minimums. The plaintiff claims the right to collect the $9,205.73, together with the October 1, 1925, instalment of minimum not paid, and the pro rate of the January 1, 1926, minimum not paid, and denies the right of the defendant to a credit for the July 1, 1925, payment of $1,406.25. This is the dispute between the parties. In one aspect of the case the dispute may be considered as relating to the minimum royalties from July 1, 1925, to the termination of the lease on February 11, 1926.

The mining lease provides that the lessees "shall pay a royalty or rent on all iron ore removed or mined, or agreed to be removed or mined from said premises, * * * 20 cents per gross ton." In the subsequent assignment whereby Little obtained an advance of 7½ cents on his one-half the provisions of the original lease were carried forward. The lease provides that the lessees "shall mine at least 75,000 gross tons in each and every year * * * or, in case such quantities are not so mined, * * * shall nevertheless pay royalty on such quantities, to be paid quarterly, in advance, on the first days of October, January, April, and July in each year." This provision connects with the prior provision binding the lessees to pay "rent on all iron ore removed or mined, or agreed to be removed or mined from said premises." There is this provision:

"Provided that if, in any one or more years, more ore is thus paid for than is actually removed in such year or years, the ore so paid for [that is, by the payment of minimums] and not removed may be removed in any subsequent year during the continuance of this lease without other payment therefor."

It is further provided:

"But such ore so permitted to be removed must be in excess of the number of tons to be mined during such subsequent years, as above stipulated."

And again:

"The ore so mined and removed from said premises shall be weighed on the railroad scales of the railroad company transporting the same from the mine or mines, which weight shall be held to be prima facie correct, and shall be the basis of settlement of royalty above provided for."

With the facts definitely in mind the question for decision is not obscure. If the 122,743 tons plus within the meaning of the lease were mined and removed in the lease year ending June 30, 1925, the plaintiff is entitled to recover the agreed royalty of $9,205.73, plus the $1,406.25 instalment of minimum royalty of October 1, 1925, the January 1, 1926, to February 11, 1926, pro rate of $640.62, and the

defendant is not entitled to a credit for the $1,406.25 minimum which it paid on July 1, 1925. If the 122,743 tons plus which were shipped between July 1 and November 20, 1925, were within the meaning of the lease not mined and removed until after July 1, 1925, then the defendant is liable for the actual royalty earned, $9,205.73, less the July 1, 1925, minimum royalty payment of $1,406.25, making $7,799.48, the amount which it admits; and it is not liable for the minimum royalty instalment of $1,406.25 accruing October 1, 1925, or the pro rate instalment of January 1, 1926, amounting to $640.62, for the payment of the actual agreed royalty on ore mined in excess of the minimums made the covenants to pay these minimums without application; or, if it is preferred, it may be said that these minimums are offset against actual royalties accruing and paid.

The 122,743 tons plus must be taken as mined and removed in the lease year commencing July 1, 1925. The lease contemplates the taking of the ore from the ground, its removal from the premises, and shipment by railway. The weights are the railway weights as determined by their scales. The evidence is that none of the ore-carrying railroads have scales at the mines or ever have had. All weigh the ore after shipment at a convenient point shortly before going onto the docks. The ore in question was shipped over the Great Northern. It was weighed in its railroad yards just before going onto the docks at Allouez Bay in Superior, Wisconsin. If shipped over the Missabe, it would have been weighed at Proctor.

The lease in different connections and sometimes loosely uses such phrases as "mined," or "mined and removed," or "removed and mined," and no one expression gives the whole meaning of the lease. Taking the lease as a whole it must be construed as intending the payment of royalties on ore taken from the premises, that is, ore mined from the premises and carried therefrom. Until thus removed royalties, other than minimums, do not accrue.

The defendant mined the leased property as an open pit or stripping operation. There is nothing in the mining contract that prevents stock-piling in open pit mining. It is rather uncommon be-

cause unnecessary and usually unprofitable. Conceivably there might be cases where it would be convenient and profitable. The lease did not require a particular manner of mining. If good honest mining requires stock-piling, the lessor cannot complain. If the lessee had chosen to remove the ore as an underground mining operation, stock-piling would have been usual and substantially necessary.

The stock-piled ore was taken from the pit in the dump-cars of the defendant and under its own motive power. In the ordinary open pit mining the railroad ore cars go into the mine and when loaded are put in trains and started on their way to the docks. The reason suggested in the record for using the dump-cars and for stock-piling was that there was a shortage of Great Northern railway cars and by stock-piling mining was expedited. It was towards the close of the season. It is not suggested that the method adopted was not good mining. It did no wrong to the plaintiff. It would not have helped it to leave the ore in place and remove it the next lease year in railway cars. Besides the lease did not specify the particular kind of mining or prohibit stock-piling. The covenants of the lease in effect require good honest mining.

How far stock-piling, either in open pit or underground mining, may be adopted by the lessee, either because of market conditions, the lack of transportation facilities, or the desirability of keeping the mine in operation though the product cannot be removed from the leased premises immediately, or how long it may stay in stockpile, is not of present concern. There is no suggestion in the proofs of undue delay or unfair mining.

The lease contemplated that the ore be taken from the premises by railway to the lake docks. The mining and removal of the stock-piled 122,743 tons plus was, within the meaning of the lease requiring payment of agreed royalties, an operation of the lease year commencing July 1, 1925. The construction adopted gives the plaintiff the agreed royalty for all ore removed. It loses no minimums, neither for the 1925 lease year nor prior years. It has received in excess of all minimums. The thought suggests itself that

the quarter commencing July 1, 1925, within which it seems that the ore was actually shipped, should be taken as the end of the period and subsequent minimums be held recoverable. An analysis shows that this is not sound. The royalties are for the lease year, not for separate quarters. The quarterly instalments are advance minimum royalties. As the lease puts it, they represent royalties for ore "already paid for in advance." The right of terminating the lease within the lease year is preserved.

The result is that the defendant is liable for the agreed royalty of 7½ cents on the 122,743 tons plus shipped after July 1, 1925, and before the termination of the lease on February 11, 1926, amounting to $9,205.73; that it is entitled to a credit thereon of $1,406.25 for the July 1, 1925, instalment of minimum paid; and that it is not liable for the $1,406.25 instalment of minimum becoming due October 1, 1925, nor for the pro rate of $640.62 of the January 1, 1926, instalment. This makes a balance of $7,799.48, not including interest.

█ In taking ore to the stock-pile the defendant found it convenient to pass off the leased premises over the St. Paul mine adjoining and back to the stock-pile. The plaintiff claims that this constituted a removal of the ore from the premises within the terms of the lease. We do not construe it so. Removal means removal from the premises on the final journey to the docks.

The judgment should be modified by reducing the recovery to $7,799.48, with interest and the costs of the court below. The defendant will recover costs in this court.

Judgment modified.