In re Henry HUFF and Nancy Huff, Debtors.

Bankruptcy No. 3–85–2591.

United States Bankruptcy Court, D. Minnesota, Sixth Division.

Jan. 15, 1988.

---

Michael R. Ruffenach, Bemidji, Minn., for debtors.

Ronald K. Carpenter, Bemidji, Minn., for Thorson, Inc.

## ORDER DENYING DEBTOR'S MOTION TO REJECT UNEXPIRED LEASE

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 11 case came on before the undersigned United States Bankruptcy Judge on May 13, 1987, upon Debtors' motion to reject an executory contract or unexpired lease with Thorson, Inc. (hereinafter "Thorson"), Debtors appeared personally and by their attorney, Michael R. Ruffenach. Thorson appeared by its attorney, Ronald K. Carpenter. Upon the testimony and evidence adduced at hearing, the moving and responsive documents and arguments of counsel, the Court makes the following Order.

Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court on October 25, 1985. Debtors are farmers who raise crops and livestock in Beltrami County, Minnesota. Thorson is a construction contractor which performs bituminous surfacing (blacktopping) on roads. It enters into lease agreements to excavate gravel for use in the preparation of blacktopping material. After conducting several tests on a portion of Debtors' real estate, and in anticipation of a successful bid on a construction project, Thorson negotiated a gravel lease with Debtors in the spring of 1983. They executed a lease on Thorson's company form on April 18, 1983. The lease was recorded in the office of the County Recorder in Bemidji, Minnesota on the same date. The agreement is entitled "Purchase and Sale of Pit Run Gravel Material." Under its terms, Debtors granted Thorson

the exclusive right to enter the ... premises for the purpose of mining and removing any sand, gravel or rock and for the storing of all materials purchased hereunder, together with the right to place such machinery and equipment as may be reasonably necessary or convenient to its operations and with further right to construct and maintain a haul road over and across the above property.

Under the contract, Thorson agreed to pay the sum of $.30 per cubic yard for the gravel aggregate removed. Thorson paid Debtors the sum of $6,000.00 upon execution of the contract, although the contract itself does not provide for this payment.[1] The contract also provides that any gravel left in stockpiles at the pit is the property of Thorson until it is sold, at which time Debtors will receive payment for it. Thorson is to restore the contours of the pit area to the satisfaction of Debtors after the completion of the excavation. The agreement extends for a period of ten years from the date of execution. The last paragraph of the contract states: "It is agreed that all the Covenants and Conditions of this Lease shall be binding upon, and inure to the benefit of the Heirs, Executors, Administrators and Assigns of the Respective Parties." The agreement was executed in the name of Debtors as "Landowner" and Thorson as "Contract Buyer."

Thorson was unsuccessful on its bid on the project which it contemplated before obtaining the lease from Debtors, and has had no blacktopping work in the area of Debtors' farm since then.[2] As a result, it has not removed any gravel from Debtors' property. In their Second Amended Disclosure Statement and Plan of Reorganization, filed on October 28, 1987, Debtors state their intent to reject their contract with Thorson and to sell the gravel to Beltrami County or any other interested party. Debtors estimate that the area covered by the lease contains gravel worth over $30,000. They allege they have contacted officials from Beltrami County whom they claim are interested in purchasing the gravel for road construction and repair in the area. According to Debtors, unless Beltrami County can obtain Debtors'

---

**1.** At hearing, Wayne Thorson, Thorson's President, testified that the $6,000.00 payment was an advance payment on the gravel to be excavated. However, in an affidavit submitted with Debtors' motion, Henry Huff stated that the $6,000.00 was consideration for Debtors' grant of the lease option.

**2.** Debtors' farm is located in a "remote area" of Beltrami County, which outside of the Bemidji area is one of the more sparsely populated counties in the state of Minnesota.

gravel, construction or repair in the area will be unlikely because there is no replacement gravel in the area and the cost of hauling such material is prohibitively expensive. However, Wayne Thorson testified that he was not aware that any parties other than Thorson were interested in the gravel. Debtors estimate in their Disclosure Statement that if they are permitted to reject the executory contract or unexpired lease, Thorson would have a general unsecured claim against the estate for approximately $3,600.00 in damages. They do not reveal how they have arrived at this estimate. Debtors do not include any income component for sale of gravel to Thorson or any other entity in their projection of future income in their disclosure statement.

Debtors seek to reject their agreement with Thorson as an "executory contract or unexpired lease" under 11 U.S.C. § 365(a). Thorson counters that if Debtors are permitted to reject the contract, it will invoke 11 U.S.C. § 365(h), which gives the lessee of real property the option to remain in possession of the premises for the duration of the lease despite the debtor/lessor's rejection, and the right to offset the rent due against damages arising from the rejection. Debtors argue that Thorson cannot invoke § 365(h) because Thorson has not even commenced excavation and therefore has never had actual possession of the premises. According to Debtors, Thorson is only entitled to general unsecured damages as a result of the rejection, pursuant to 11 U.S.C. § 502(g). Thorson argues that since § 365(h)(1) applies to timeshare plans as well as leases, the right to possession under that section must be interpreted broadly to protect lessees like Thorson who have not occupied the premises continuously but who nevertheless have a protectable property interest.

 The threshold issue is whether Debtors' contract with Thorson is an unexpired lease or instead an executory contract in the form of a license or a grant of minerals in place. Section 365(h) by its terms applies only to unexpired leases of real property, and would not apply were

the contract one for sale of personal property. Whether an agreement is an executory contract or an unexpired lease is a question of state law. *In re J.H. Land & Cattle Co., Inc.*, 8 B.R. 237 (Bankr.W.D. Okla.1981); *In re Myklebust*, 26 B.R. 582 (Bankr.W.D.Wis.1983). Under Minnesota law, whether a contract regarding minerals is a license, lease, or sale depends on the terms of the contract itself. *State v. Royal Mineral Ass'n*, 132 Minn. 232, 234, 156 N.W. 128 (1916). A license with respect to real property is a personal, unassignable, and ordinarily revocable, privilege, conferred in writing or by parol, to perform an act on land without possessing any interest in the land. *See*, 49 AM.JUR.2d *Landlord and Tenant* § 5 (1970). A license is merely a permit or privilege to do what otherwise would be unlawful. While it has been regarded, for some purposes, as a valuable property right, strictly speaking, a license is not property or a property right; nor does it create a vested right. *Radke v. Union Pacific Railroad Company*, 138 Colo. 189, 334 P.2d 1077, 1087 (1959); *Palmetto Fire Insurance Company v. Beha*, 13 F.2d 500 (D.C.N.Y.1926). A licensee is one who has mere permission to use the land, with no interest in or exclusive possession of the land since the licensor retains complete dominion over the land. *Seabloom v. Krier*, 219 Minn. 362, 367, 18 N.W.2d 88, 91 (1945); 1 TIFFANY, REAL PROPERTY, § 79. (3d ed. 1939). Since a licensee has an interest only in the proceeds and not in the land itself, his interest is in the nature of personalty, not realty, and his possession is the possession of the owner. *Radke*, 334 P.2d at 1096 (citing *Saxman v. Christmann*, 52 Ariz. 149, 79 P.2d 520 (1938)).

 A mining lease, by contrast, creates an interest or estate in the land itself. The lessee is given possession of the land which is exclusive even of the lessor except as the lease permits his entry, and saving always the lessor's right to enter to demand rent or to make repairs. *Seabloom*, 219 Minn. at 367, 18 N.W.2d at 91. The lessee's right to exclusive possession of the premises generally carries with it the right to eject third parties who interfere with the

lessee's enjoyment of the land. *United States v. Atomic Fuel Coal Co.*, 383 F.2d 1, 5 (4th Cir.1967). A lease, and not a license, gives an immediate interest in minerals in their natural state. The royalties received by the lessor constitute rents and profits of the land and, as realty, follow title to the land. *State v. Royal Mineral Ass'n*, 132 Minn. at 235, 156 N.W. at 129; *Boeing v. Owsley*, 122 Minn. 190, 105, 142 N.W. 129 (1913); 1 TIFFANY, REAL PROPERTY §§ 47, 360. Finally, the sale of minerals in place is an outright grant of all the minerals contained on the land. Title to the minerals vests in the purchaser. The monies or royalties received by the grantor are deemed proceeds from the sale of property or installments on the purchase price rather than mere rental payments. *Boeing v. Owsley, supra; United States Steel Corp. v. U.S.*, 270 F.Supp. 253, 261 (S.D.N.Y.1967) *aff'd.*, 445 F.2d 520 (2d Cir. 1971), *cert. den.*, 405 U.S. 917, 92 S.Ct. 940, 30 L.Ed.2d 786 (1972); *State ex rel. Inter-State Iron Co. v. Armson*, 166 Minn. 230, 207 N.W. 727 (1926).

In Minnesota, mining leases generally have the following characteristics: the parties themselves have designated the contract as a lease and themselves as lessor and lessee; the lessee is granted the exclusive right to enter the premises for the express purpose of mining and may place such equipment and structures on the premises as are necessary for that purpose; the lessee is required to pay the lessor a certain percentage of the profits obtained from the sale of such minerals; a minimum quantity of minerals must be mined or else a minimum payment must be made if no minerals are mined at all; the lessor retains the right of re-entry for the purpose of inspection; the contract is of a fixed duration; and minimum notice by either party is required for a termination of the contract. *See State v. Evans*, 99 Minn. 220, 108 N.W. 958 (1906); *Owsely, supra; Royal Mineral Ass'n, supra; Nelson v. Republic Iron & Steel Co.*, 240 F. 285 (8th Cir.1917); *Twitchell v. Cummings*, 123

Minn. 270, 143 N.W. 785 (1913). In those cases, instruments containing most or all of the above characteristics were deemed to be mining leases and not licenses or sales of minerals in place under Minnesota law.

In the instant case, the contract between Debtors and Thorson has the essential characteristics of a mining lease. The final paragraph of the contract designates the agreement as a lease, though the agreement is entitled "Purchase and Sale of Pit Run Gravel Material." Both parties and their respective counsel have consistently referred to the agreement as a lease in their moving papers as well as at hearing.[3] Thorson's right to enter the premises and place equipment and structures thereon is limited to the express purpose of mining and is exclusive of third parties.

The $.30/cubic yard of gravel excavated constitutes Thorson's rental payments. There is no additional rental provision for a minimum quantity of gravel to be excavated, or for an annual rental payment if no gravel is excavated. The absence of this kind of provision compels a finding that the $6,000.00 payment Thorson made to Debtors upon the execution of the lease represents Thorson's consideration for the grant of the lease (and its exclusivity provision) option rather than an advance against future payment on the gravel to be excavated. To conclude otherwise would lead to the absurd result that Thorson could fail to excavate any gravel whatsoever for the 10–year period and then demand that Debtors return the $6,000.00 "advance" payment since there were no royalties generated from excavated gravel to apply against the $6,000.00. Debtors would then have gained nothing by granting Thorson the exclusive right to excavate gravel from their pit for 10 years. Moreover, unless the lease expressly so provides, the lessee cannot offset minimum annual payments under a lease against royalties generated in a subsequent year. *Nelson v. Republic Iron & Steel Co.*, 240

**3.** Although the parties' legal characterization of a document is generally not determinative, it is nevertheless indicative of their intent.

F. 285 (8th Cir.1917); *State v. Cavour Mining Co.,* 143 Minn. 271, 173 N.W. 415 (1919).

Hence, it appears that the contract between Debtors and Thorson contains the key elements of typical mining leases in Minnesota and therefore is in fact a mining lease [4] under Minnesota law.

■ The next question, then, is whether this lease falls within the ambit of 11 U.S.C. § 365(h)(1). That statute provides:

> If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, or a time-share interest under a timeshare plan under which the debtor is the timeshare interest seller, the lessee or timeshare interest purchaser under such lease or timeshare plan may treat such lease or time share plan as terminated by such rejection, where the disaffirmance by the trustee amounts to such a breach as would entitle the lessee or timeshare interest purchaser to treat such lease or timeshare plan as terminated by virtue of its own terms, applicable nonbankruptcy law, or other agreements the lessee or timeshare interest purchaser has made with other parties; or, in the alternative, the lessee or timeshare interest purchaser may remain in possession of the leasehold or timeshare interest under any lease or timeshare plan the term of which has commenced for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee or timeshare interest purchaser under applicable nonbankruptcy law.

11 U.S.C. § 365(h)(1). Under 11 U.S.C. § 365(h)(2), the lessee's only claim against the estate is the right to offset the rent due against damages arising from the debtor/lessor's rejection. Section 365(h) codi-

fies a delicate balance between the rights of a debtor/lessor and the rights of its tenants. A trustee may reject its obligations under undesirable leases, but it may not deprive tenants of possession. Thus, it must allow tenants to pay for essential services which would otherwise be its obligations, with the rents reserved in their leases. *In re Stable Mews,* 35 B.R. 603 (Bankr.S.D.N.Y.1983). The applicability of § 365(h) to mining leases turns on whether the mining lease is treated as an interest in real property or personal property under state law. Oftentimes the use of the term "lease" is more in deference to custom than a description of the legal relationship involved. *Hinds v. Phillips Petroleum Co.,* 591 P.2d 697 (Okla.1979). Therefore, it is necessary to determine whether a mining lease is a true lease granting an interest in real property, or a lease in name only, which grants merely an interest in personal property. *In re Myklebust,* 26 B.R. 582 (Bankr.W.D.Wis.1983)—a case involving facts and issues almost identical to those in this case—the court found that a mineral lease was an interest in land under Wisconsin law and, therefore, constituted an unexpired lease of real property under § 365(h). The court then applied the business judgment test in determining whether the debtors should be permitted to reject the unexpired gravel lease. After finding that the debtors had received no firm offers, that they were only speculating that they could do better under another lease or sale of the property, and that there was little if any potential advantage to Debtors' reorganization in rejecting the mineral lease and considerable risk of loss if new leases or sales did not provide a sufficient premium to offset potential damages caused by the rejection, the court denied the debtors' motion to reject the unexpired mineral lease.[5]

---

**4.** Whether gravel constitutes a "mineral" is an open question in Minnesota. *See Resler v. Rogers,* 272 Minn. 502, 139 N.W.2d 379 (1965). For the purposes of this proceeding, this Court concludes that gravel is a mineral.

**5.** Compare, *In re J.H. Land & Cattle Co., Inc.,* 8 B.R. 237 (Bankr.W.D.Okla.1981), in which the court found that under Kansas law, an oil and

gas lease does not create any present vested estate in property but instead merely conveys a license to enter upon and explore the land for such minerals and if they are discovered to produce and sever them. Accordingly, the court there found that under Kansas law, the leasehold interest in oil and gas was an intangible personal property right and therefore, the lessee

In Minnesota, mining leases are leases in fact as well as in name. *State v. Royal Mineral Ass'n, supra; State v. Evans, supra.* The rights of the parties to a Minnesota mining lease are governed by the law of landlord and tenant rather than the law of sales or other contract law. *Pillsbury F.M. Co. v. Lake Superior Consol. Iron Mines,* 178 Minn. 254, 226 N.W. 843 (1929). Hence, the mining lease between Debtors and Thorson is in fact a lease of real property and not mere personal property under Minnesota law. For the purposes of this case, then, the agreement between Debtors and Thorson must be treated as an unexpired lease rather than as an executory contract.

The next question, then, is whether Debtors should be allowed to reject the unexpired lease. Under 11 U.S.C. § 365(a), a trustee or debtor-in-possession may reject an executory contract or unexpired lease "subject to the Court's approval." Because the Bankruptcy Code on its face provides virtually no guidance to the courts in evaluating a proposed rejection of an executory contract or unexpired lease, two divergent standards have evolved: the burdensome property test and the business judgment test. *In re Stable Mews Associates, Inc.,* 41 B.R. at 595.

█ Under the burdensome property test, an executory contract or unexpired lease can be rejected only when continued performance under the contract or lease results in an actual loss to the estate. *American Brake Shoe and Foundry Co. v. New York Rys. Co.,* 278 F. 842 (S.D.N.Y. 1922); *In re Vidicom Systems, Inc.,* 2 BANKR.CT.DEC. (CRR) 2 (Bankr.S.D.N.Y. 1975). Under this standard, a trustee must demonstrate that income generated under the lease fails to cover the operating expenses of the building. *In re Chicago Rapid Transit Co.,* 129 F.2d 1 (7th Cir.

1942), *cert. den.,* 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942).

█ Under the business judgment test, which provides considerably more flexibility to the trustee, the trustee need only demonstrate that rejection of the executory contract or unexpired lease will benefit the estate. *Matter of Minges,* 602 F.2d 38 (2d Cir.1979). The primary element of the business judgment test is the extent to which rejection will benefit the general unsecured creditors of the estate. This may involve a balancing of interests. *In re Chi–Feng Huang,* 23 B.R. 798 (9th Cir.BAP 1982). The business judgment test is by far the more favored test in most jurisdictions. *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 (1943); *Matter of Tilco,* 558 F.2d 1369, 1372 (10th Cir.1977); *In re Roman Crest Fruit, Inc.,* 35 B.R. 939 (Bankr. S.D.N.Y.1983); *In re J.H. Land & Cattle Co., Inc., supra; In re Summit Land Co.,* 13 B.R. 310 (Bankr.D.Utah 1981); *In re Myklebust, supra; In re Grayhall Resources, Inc.,* 63 B.R. 382 (Bankr.D.Colo. 1986). Bankruptcy Courts in this District have cited with approval the business judgment test. *In re Briggs Transportation Co.,*[6] 39 B.R. 343 (Bankr.D.Minn.1984). Although the Eighth Circuit has not squarely addressed the issue of the proper test to apply, other bankruptcy courts within the Eighth Circuit have also cited the business judgment test with approval. *See, In re Rath Packing Co.,* 36 B.R. 979 (Bankr.N.D. Iowa 1984); *In re Global Internat'l. Airways,* 35 B.R. 881 (Bankr.W.D.Mo.1983). Those courts which have adopted the business judgment test generally emphasize that the test is to be liberally applied, and that the motion to reject should ordinarily be granted.

█ The business judgment test is appropriately applied to this proceeding. Un-

had no assertable right of possession under § 365(h)(1).

**6.** In *Briggs,* Judge Robert J. Kressel noted that although the business judgment test is the usual standard applied in approving or denying rejection of executory contracts, a more stringent test is appropriate in the collective bargaining context because of the competition between the policy of the National Labor Relations Act in encouraging the enforcement of collective bargaining agreements and the Bankruptcy Code's policy of giving the financially-beleaguered debtor a fresh start.

der that test, Debtors have failed to demonstrate that rejection of the unexpired Thorson lease would benefit the estate. Debtors have not showed that a more profitable gravel-sale arrangement is available to them. Although Beltrami County has apparently expressed some interest, Debtors have not received a firm offer from the County, or any other party. Debtors contend that rejection of the Thorson lease will aid in their reorganization efforts. However, they have produced such sparse evidence to support this contention that it is clear that they are only speculating that they might do better under another lease. Debtors are essentially attempting to eliminate Thorson as a middleman by contracting directly with Beltrami County or any other interested party for the excavation of the gravel. The general unavailability of gravel in the area and the prohibitive cost of hauling it from other areas make it likely that Beltrami County or any other interested party would contract either with Debtors or Thorson to obtain gravel to meet its needs. Thorson's current lack of road-surfacing work in the area and the lack of firm evidence of interest by any other party indicate that there is no active market for the gravel, and it simply is unknown whether Debtors will be able to sell the gravel elsewhere.

The most troublesome result of Debtors' proposed rejection of the Thorson lease is that even by rejecting the lease, Debtors would not be at liberty to enter into a new lease arrangement with another party until the expiration of the Thorson lease. Since Thorson may properly invoke 11 U.S.C. § 365(h) if the Court allows Debtors to reject the unexpired lease,[7] Debtors would be compelled to grant Thorson the right of entry onto the premises. It is at least arguable that Debtors' obligation under the rejected lease would cease there, and that Debtors could bar Thorson from removing any gravel from the property. Under § 365(h), the lessor is not required to pro-

vide any additional services to the lessee other than the right of possession. *Acme Precision Bldg. v. Dayton Forging,* 23 B.R. 79 (Bankr.S.D.Ohio 1982). Thorson would still be entitled to an exclusive right of entry and possession, without being able to extract gravel. Debtors would not obtain any royalty payments from Thorson if they prohibited it from extracting gravel. This would lead to a nonsensical result where Thorson could effectively destroy the value to the estate of Debtors' rejection rights, were it sufficiently vindictive. Were § 365(h) construed so as *not* to allow Debtors to refuse to honor their covenant to allow gravel extraction, it is clear that rejection would serve no purpose at all. Debtors have no duties to Thorson other than to permit access to the land and removal of gravel. They would reap no benefit in the form of lower expenditures attendant to the lease. Thorson could still extract gravel and would be liable to Debtors for royalties—and would suffer no damages which Thorson could offset against the royalties under 11 U.S.C. § 365(h)(2). The net result of rejection under this scenario is that the *status quo* would be unchanged.

In sum, Debtors' proposed rejection of the lease with Thorson would not benefit the estate. Even if it were allowed, Debtors could only enter into a lease agreement with Beltrami County or another party at a more profitable rate after the lease with Thorson expired. They could do this without rejecting the lease. It is clear that § 365(a) is unavailing to Debtors under the facts presented. The debtor's interest in reorganization is not the only factor which the Court must take into consideration when § 365(h) is involved. As the court noted in *In re Upland/Euclid, Ltd.,* 56 B.R. 250 (9th Cir.BAP 1985), both § 365(h) and § 365(i) (which gives the purchaser of real property under a land installment sales contract similar protection) reflect a legisla-

---

7. Though by its structure § 365(h) would appear to be most applicable to commercial-lease situations like those involving debtors operating shopping centers, the language of the statute does not limit it to such situations and it must be applied generally to all leases of real proper-

ty. The legislative history does not indicate any Congressional intent to limit application of the statute to particular types of leases. H.R.REP. No. 595, 95th Cong., 1st Sess. 349 (1977). S.REP. No. 989, 95th Cong. 2d Sess. 60 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

tive intention that certain pre-petition expectations of parties to real property transactions are to be protected even if this protection does not benefit the bankruptcy estate. Any general goal of maximizing the bankruptcy estate is limited in recognition of these real property interests. *In re Upland/Euclid,* 56 B.R. at 253. Collier summarized this limitation as follows:

> The desire to effect a feasible plan of reorganization cannot override the vested rights of third persons who are not creditors of the debtor. Insofar as the lessee's leasehold is concerned he is as much a stranger to the reorganization as one who purchased, received and paid for goods of the debtor prior to reorganization.

6 COLLIER ON BANKRUPTCY ¶ 3.24, at 602–03 (14th ed. 1977) (commenting on similar language of § 70(b) of the Bankruptcy Act of 1898, as amended). These observations only further underline the conclusion that Debtors have failed to satisfy the business judgment test.

IT IS THEREFORE ORDERED that Debtors' motion to reject their unexpired gravel lease with Thorson, Inc. is denied in all respects.